# Richmond

Ross Worrie and Charles E. Baily, Etc. v. Christine Boze and Lynn J. Boze, Partners Trading and Doing Business Under the Firm Name and Style of Arthur Murray Studio.*

November 26, 1956.

Record No. 4586.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

---

* Petition for rehearing awarded January 21, 1957.

The opinion states the case.

*Emanuel Emroch* (*George E. Allen,* on brief,) for the plaintiffs in error.

*Francis V. Lowden, Jr.* and *Archibald G. Robertson* (*Hunton, Williams, Gay, Moore & Powell,* on brief), for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

This appeal is a sequel to that involved in *Worrie* v. *Boze,* 191 Va. 916, 62 S. E. 2d 876. A statement of the factual background and recital of the proceedings in the first suit will point up the issues involved in the present appeal. The parties will be referred to as they appeared in the court below in the two suits.

In March, 1947, Christine Boze and Lynn J. Boze, as partners, opened a dancing school in the City of Richmond under the name of Arthur Murray Studio. Pursuant to separate written contracts the defendants, Ross Worrie and Charles E. Baily, were employed by the plaintiffs as dancing instructors. Each of these contracts contained covenants whereby each defendant agreed that upon the termination of his employment with the plaintiffs for any cause, and for a period of two years thereafter, he would not engage in teaching dancing within twenty-five miles of the plaintiffs' studio.

On December 4, 1948, each of the contracts of employment was terminated and shortly thereafter the two defendants opened a dancing school in Richmond under the name of Ross-Baily School of Dancing. Thereupon Christine Boze and Lynn J. Boze filed an

equity suit in the court below against Worrie and Baily to restrain them from operating and conducting this school in violation of the terms of their respective contracts with the plaintiffs. There were prayers for injunctive and general relief, but no prayer for an assessment of damages. After full hearings a decree was entered enjoining the defendant, Worrie, from violating the terms of his contract with the plaintiffs for a period of two years from the date of the termination of his employment with them. On Baily's plea of infancy the bill was dismissed as to him.

On an appeal by Worrie we affirmed the decree against him. 191 Va. 916, 62 S. E. 2d 876. No appeal was taken from the decree in so far as it dismissed the bill as to the defendant, Baily.

Shortly after the affirmance of the decree against Worrie the plaintiffs filed their petition in the lower court in the cause, which had been pending therein, praying for an assessment of damages against both Worrie and Baily for their operation of their dancing school in violation of Worrie's contract with the plaintiffs. The lower court sustained the defendants' motion to dismiss the petition, the order stating that such dismissal was "without prejudice, upon the ground that this court is wholly without jurisdiction to act further in this proceeding."

The plaintiffs filed their motion for judgment against Worrie and Baily in the present case claiming compensatory and punitive damages for the "fraudulent, willful and malicious acts of the defendants and each of them" in that they had "wrongfully and unlawfully conspired to breach," and had induced the breach of, the contract which Worrie had entered into with the plaintiffs. The defendants filed a plea of the one-year statute of limitations and a plea of res judicata, both of which were overruled. After grounds of defense had been filed there was a trial by a jury which resulted in a verdict in favor of the plaintiffs against both defendants for compensatory damages of $10,000 and punitive damages of $5,000. A motion to set aside the verdict was overruled and to review the judgment entered thereon the present writ was allowed.

The first assignment of error is that the lower court erred in overruling the defendants' plea that the plaintiffs' claim was barred by the one-year statute of limitations. Code, § 8-24. The lower court upheld the plaintiffs' contention that the five-year limitation in the same section applied.

A determination of the matter turns upon the proper interpretation of Code, §§ 8-24 and 64-135.

Code, § 8-24, reads: *"Of actions not before specified.—*Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued."

Code, § 64-135, reads: *"For goods carried away, waste, or damage to estate of or by decedent.—*An action of trespass or trespass on the case may be maintained by or against a personal representative for the taking or carrying away any goods or for the waste or destruction of, or damage to, any estate of or by his decedent."

"Whether the five-year or one-year limitation provided for in section 8-24 applies depends upon whether the cause of action be of such nature that it would survive. If the action would survive the limitation is five years, but if it would not survive the limitation is one year." *Progressive Realty Corp.* v. *Meador,* 197 Va. 807, 809, 91 S. E. 2d 645, 646, 647.

In *Winston* v. *Gordon,* 115 Va. 899, 915, 916, 80 S. E. 756, 763, we quoted with approval the rule in Graves on Pleading, page 16, that those actions which survive are " 'Those for wrong to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract.' " See also, *Trust Company of Norfolk* v. *Fletcher,* 152 Va. 868, 877, 878, 148 S. E. 785, 73 A. L. R. 1111; *Westover Court Corp.* v. *Eley,* 185 Va. 718, 722, 40 S. E. 2d 177, 179; *Progressive Realty Corp.* v. *Meador, supra,* 197 Va., at page 809, 91 S. E. 2d, at page 647.

In the present case the defendants insist that the plaintiffs' action is not for direct damage to their property or estate, but is merely a claim for damages for being deprived of additional profits. Hence, they say, the plaintiffs' claim would not survive. We do not agree with this contention.

It is well settled that the right to performance of a contract and the right to reap profits therefrom are property rights which are entitled to protection in the courts. Consequently, suits for procuring breach of contract proceed on this basis. 15 C. J. S., Conspiracy, § 13, pp. 1020, 1021; Annotation, 84 A. L. R. 46.

The plaintiffs' claim here is of this nature. Their claim is that their business or estate, their property in their contract with Worrie,

was destroyed by reason of the acts of the defendants done in pursuance of their conspiracy. Moreover, they allege that pursuant to their conspiracy the defendants solicited the plaintiffs' customers and thus deprived the plaintiffs of some of their business. Clearly, under these allegations, the wrong done and damage done are directed to the estate or property of the plaintiffs and not to them personally. See *Progressive Realty Corp.* v. *Meador, supra; Barnes Coal Corp.* v. *Retail Coal Merchants Ass'n.*, 4th Cir., 128 F. 2d 645.

The plaintiffs' claim for punitive damages is incidental to and of the same nature as their claim for compensatory damages. Their claim for punitive damages is no more personal to the plaintiffs than their claim for compensatory damages. Both were claimed for direct damage to the plaintiffs' property by the wrongful acts of the defendants. Hence the claim for punitive damages is of such nature that it, too, would survive.

Accordingly, we hold that the defendants' plea of the statute of limitations was properly overruled.

■ The defendants next insist that the lower court erred in rejecting their plea of res judicata. The argument is that the plaintiffs' case here is based on the identical cause of action which was litigated in the former equity suit and between the same parties; that the plaintiffs could and should have litigated their claim for damages in that suit; and that having failed to do so they are barred by the principle of res judicata from maintaining the present action.

In *Kemp* v. *Miller*, 166 Va. 661, 674, 186 S. E. 99, 103, the general rule is stated thus:

" 'When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings, or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered. As to such matters a new suit on the same cause of action cannot be maintained between the same parties.' 15 R. C. L., § 438, p. 962."

See also, *Winborne* v. *Doyle*, 190 Va. 867, 871, 59 S. E. 2d 90, 92, 93.

The plaintiffs insist that even if the cause of action in the former equity suit be the same as that in the present action, which they deny,

the former suit is not a bar to the present action because, they say, there was no prayer in their bill for an assessment of damages and hence that matter was not within the issues made or tendered by the pleadings in that suit. On the other hand, the defendants contend that the matter of damages was put in issue by the plaintiffs' prayer for general relief, or that the bill could and should have been amended so as to adjudicate that matter, and hence the former suit is a bar to the present action. The precise question does not seem to have been decided by this court and it is not necessary that we decide it here. We are convinced that while the causes of action in the two suits are closely related, they are not identical.

One who asserts the defense of res adjudicata has the burden of proving that the very point or question was in issue and determined in the former suit. 50 C. J. S., Judgments, § 843, pp. 410, 411; 30 Am. Jur., Judgments, § 272, p. 992. Proof of identity of issues must be established by a preponderance of the evidence. 50 C. J. S., Judgments, § 843-c, p. 417; *Fishburne* v. *Ferguson*, 85 Va. 321, 325, 7 S. E. 361. Here the defendants have failed to carry the burden of proof on that issue. On the contrary, it clearly appears from the evidence that the causes of action in the two suits are not identical.

The purpose of the first suit was to restrain each of the defendants, Worrie and Baily, from violating the restrictive provisions of his contract with the plaintiffs. The issues in that suit were, (1) was Worrie's contract with the plaintiffs valid and enforceable, and if so, should it be enforced; and (2) was Baily's contract with the plaintiffs valid and enforceable, and if so, should it be enforced? In that case it was decided that Worrie's contract with the plaintiffs was valid and enforceable and should be enforced against him, but that, because of his infancy, Baily's contract with the plaintiffs was not enforceable against him (Baily).

In the present case the issues are, (1) did Worrie and Baily conspire to breach Worrie's contract with the plaintiffs, and (2) if so, were the plaintiffs entitled to damages for the illegal acts of Worrie and Baily done pursuant to such conspiracy? These issues were not involved in the first suit. That suit involved no question of conspiracy between the two defendants to violate either of their contracts with the plaintiffs. There the plaintiffs sought merely to restrain each of the defendants from violating his contract with them.

Plainly the plaintiffs' cause of action in the first suit against Baily is different from their cause of action against him in the present suit.

The first suit against Baily involved the validity and enforceability of *Baily's* contract with the plaintiffs. The present suit against Baily involves the breach of *Worrie's* contract with the plaintiffs. It is based upon the alleged tort of Baily in conspiring with Worrie to breach Worrie's contract.

It is true that in the first suit the plaintiffs might have asserted a claim for damages against Worrie for the breach of his contract with them. But it does not follow from that that the plaintiffs did not have a separate cause of action against Worrie for conspiring with Baily to breach that contract. The cause of action against Worrie for the breach of his contract involved the acts and conduct of Worrie alone. No conspiracy with Baily, or anyone else, was necessary to maintain that action. Mere proof of the breach by Worrie was sufficient. On the other hand, the cause of action against Worrie in the present suit is based upon his alleged tort in conspiring with Baily to breach the Worrie contract. Here the plaintiffs were required to prove something more than the mere breach by Worrie. An essential element in the present case, absent in the first, is the alleged conspiracy between Worrie and Baily, as the result of which Worrie was induced to breach his contract.

In *Sorenson* v. *Chevrolet Motor Co.*, 171 Minn. 260, 214 N. W. 754, 84 A. L. R. 35, the plaintiff, Sorenson, sued Chevrolet Motor Company and another claiming that the defendants had conspired to breach Chevrolet's contract with plaintiff. In holding that the complaint stated a cause of action against Chevrolet, the court said that if Chevrolet deliberately breached its contract with the plaintiff "it subjected itself to a certain definite liability to plaintiff, but that liability rests on a cause of action other than that mentioned in the complaint." (214 N. W., at page 755.) In other words, the plaintiff's cause of action against the defendant, Chevrolet, for the breach of its contract with the plaintiff was different from the cause of action against that defendant for conspiring with another to breach that contract.

Similarly, in *Hornstein* v. *Podwitz*, 254 N. Y. 443, 173 N. E. 674, 84 A. L. R. 1, which was an action for procuring the breach of a contract, it was said: "The fact that the plaintiff also has a cause of action against his principal for breach of contract does not prevent his having a cause of action in tort against" those who procured a breach of that contract. 173 N. E., at page 675.

We hold that in the case now before us the plaintiffs had these

separate causes of action or claims against each of the defendants: (1) The claim asserted in the first suit against each defendant for the breach of his own contract, and (2) The claim asserted in the second suit against both defendants for conspiring to breach Worrie's contract with the plaintiffs. Hence the plea of res judicata was properly overruled.

The defendants complain of the action of the lower court in granting Instruction "A" which in substance told the jury that the plaintiffs were entitled to recover damages of both defendants if they found from the evidence that Worrie and Baily had conspired to cause or induce Worrie to violate his contract with the plaintiffs and that Worrie had in fact violated such contract. The point is made that an action will not lie against Worrie for conspiring to breach his own contract, and that the plaintiff's only recourse for damages against him was by an action for breach of such contract.

While there is some authority to the contrary, the great weight of authority supports the rule that an action in tort will lie against those who conspire to induce the breach of a contract. 15 C. J. S., Conspiracy, § 13, p. 1020; 11 Am. Jur., Conspiracy, § 50, p. 582; Annotations, 84 A. L. R. 98, 26 A. L. R. 2d 1284. The conspirators are jointly and severally liable for all damage resulting from the conspiracy. 15 C. J. S., Conspiracy, § 18, p. 1028; 11 Am. Jur., Conspiracy, § 54, pp. 584, 585; Annotations, 84 A. L. R. 93, 26 A. L. R. 2d 1269.

The basis of the action is the wrong which is done pursuant to the conspiracy and results in damage to the plaintiff. *Gallop* v. *Sharp*, 179 Va. 335, 338, 19 S. E. 2d 84, 86.

There is a conflict of authority as to whether the rule will be applied to hold one liable for conspiring to breach his own contract. Among the cases supporting the view of the defendants are, *Hein* v. *Chrysler Corp.*, 45 Wash. 2d 586, 277 P. 2d 708; *Barber* v. *Stephenson*, 260 Ala. 151, 69 So. 2d 251; *Canister Company* v. *National Can Corp.*, D. C. Del., 96 F. Supp. 273; *Allison* v. *American Airlines*, D. C. Okl., 112 F. Supp. 37; *Sax* v. *Sommers*, 108 N. Y. S. 2d 467.

But what we deem to be the better-reasoned cases hold that such an action will lie against a party to the contract. Among these cases are, *Sorenson* v. *Chevrolet Motor Co., supra; Wade* v. *Culp*, 107 Ind. App. 503, 23 N.E. 2d 615; *Hendricks* v. *Forshey*, 81 W. Va. 263, 94 S. E. 747, L. R. A. 1918C, 150; *Charles* v. *Texas Co.*, 199 S. C. 156, 18 S. E. 2d 719; *Luke* v. *DuPree*, 158 Ga. 590, 124 S. E. 13; *Motley*,

*Green & Co.* v. *Detroit Steel & Spring Co.*, C. C., 161 F. 389; *Falstaff Brewing Corp.* v. *Iowa Fruit & Produce Co.*, 8th Cir., 112 F. 2d 101.

These latter cases proceed upon the principle that all persons who unite to induce a breach of contract are jointly and severally liable in damages therefor.

We agree with this reasoning in *Motley, Green & Co.* v. *Detroit Steel & Spring Co., supra:* "If it be an actionable wrong for a third person to interfere in a contract and induce one of the parties thereto to break it to the injury of the other, can it be said it is not equally a wrong for one of the parties to the contract to invite a third party to unite with him and aid him in breaking the contract in such a way as possibly to escape liability in an action for nonperformance and, gaining his consent, to act together in consummating their agreement? There are many refinements in the law, necessarily so, but courts should be as astute in applying well-known principles of justice to remedy wrongs as the wrongdoers are in devising schemes to perpetrate them." 161 F., at page 397.

*Hendricks* v. *Forshey, supra,* involved a situation somewhat similar to that with which we are here concerned. There the plaintiff's declaration alleged that he had contracts with the defendants and others, severally, to haul their milk to market and that the defendants, including those who were parties to the contracts, unlawfully and maliciously conspired to breach their several contracts. It was held that these averments stated a good cause of action. The syllabus by the court reads thus: "Persons having similar individual contracts with a third person who conspire together to breach them, and do breach them in pursuance of such conspiracy, whether for personal gain or sinister motives, are liable therefor in an action for tort in the nature of a conspiracy."

Consequently, we agree with the ruling of the lower court that Worrie could be held liable for conspiring to breach his own contract with the plaintiffs.

The defendants further contend that the evidence adduced by the plaintiffs is insufficient to sustain a finding as to their liability to the plaintiffs for damages either compensatory or punitive. Moreover, they contend that the evidence of compensatory damages is too uncertain and speculative to sustain the award of the jury.

The evidence on behalf of the plaintiffs, which the jury have accepted, amply supports a finding that the defendants conspired to

procure a breach of Worrie's contract with the plaintiffs, and that pursuant to such conspiracy that contract was breached. It shows that after the defendants, Worrie and Baily, had become proficient as dancing instructors, and while still in the employ of the plaintiffs, they conspired to open a dancing school in Richmond.

Upon leaving the employ of the plaintiffs, the defendants, pursuant to their conspiracy and in violation of the provisions of the Worrie contract with the plaintiffs, opened their studio in competition with the plaintiffs. There is evidence that the defendants actually solicited some of the plaintiffs' customers. As the trial court properly said in overruling the motion to set aside the verdict, "The breach of contract which occurred was a direct result of the agreement of these parties to establish together a competing studio contrary to the terms of the Worrie contract." Consequently, under the authorities cited above, the defendants were jointly and severally liable to the plaintiffs for all damage resulting from their acts done pursuant to the conspiracy.

The defendants argue that the evidence fails to show that the plaintiffs were damaged by reason of the conspiracy which brought about the breach of the Worrie contract; that there is no competent evidence showing that the plaintiffs' business was damaged or injured or that the plaintiffs sustained any loss of profits by reason of the acts complained of. They say that the evidence shows that despite the competition from the defendants' studio the plaintiffs' business and profits therefrom increased during the period in question.

It is well settled that in actions of this character involving injury to business or loss of profits, where the existence of a loss has been established, absolute certainty in proving its quantum is not required. Where the plaintiff has shown to the satisfaction of the jury that he has suffered substantial damage by the injury, he is not precluded from recovering nor confined to merely nominal damages because he cannot show the exact amount with certainty. "(T)he quantum may be fixed when the facts and circumstances are such as to permit of an intelligent and probable estimate thereof." *Jefferson Standard Life Ins. Co.* v. *Hedrick*, 181 Va. 824, 835, 27 S. E. 2d 198, 202, and cases there collected.

By reason of the dismissal of the bill as to Baily, Worrie's appeal from the injunctive decree against him and his posting a supersedeas bond, these defendants were able to operate their studio until the interdicted two-year period had expired.

The undisputed evidence is that prior to the acts complained of the plaintiffs had a well established, profitable and growing business. But for the acts of the defendants in establishing their studio the plaintiffs would have been without competition in Richmond. It was shown that from the date of the establishment of their studio in January, 1949, through December, 1950, the defendants built up a profitable business, with an enrollment of 344 pupils. Thirty-seven of these had been former pupils of the plaintiffs. In the meantime the plaintiffs' enrollment of pupils decreased from 455 in 1948 to 334 in 1949 and 340 in 1950. Their net profits also decreased. The jury had the right to infer from the evidence that this decrease in the plaintiffs' business was a proximate result of the competition from the defendants' studio. Since, as has been said, the plaintiffs' business had been profitable prior to the opening of the defendants' studio, and continued to be profitable thereafter, the jury had the right to infer that but for this competition by the defendants the plaintiffs' profits would have been even greater. Moreover, the plaintiffs' evidence showed the approximate worth of each enrolled pupil in their business. These facts and circumstances were sufficient to permit the jury to make an intelligent and probable estimate of the damage suffered by the plaintiffs.

The determination of the quantum of compensatory damages was submitted to the jury on instructions which are admitted to be in proper form. Consequently, the jury's award is supported both by the law and the evidence.

■ In those jurisdictions where an action for conspiracy to breach a contract is allowable, the authorities agree that exemplary or punitive damages in addition to compensatory damages may be awarded if the act is done with malice or wantonness. 15 C. J. S., Conspiracy, § 33, p. 1056; 11 Am. Jur., Conspiracy, § 58, p. 587. See also, *Wade* v. *Culp, supra; Charles* v. *Texas Co., supra.*

It was held in the recent case of *Childress* v. *Abeles,* 240 N. C. 667, 84 S. E. 2d 176, involving a conspiracy to induce the breach of a contract, that legal malice is proved if it appears that the defendant with knowledge of the contract intentionally and without justification induced one of the contracting parties to break it. 84 S. E. 2d, at page 182.

In *Anchor Company* v. *Adams,* 139 Va. 388, 124 S. E. 438, we held that the willful and unauthorized destruction of one's business is ground for the imposition of punitive damages against the wrongdoer.

See also, *United Construction Workers* v. *Laburnum Construction Corp.*, 194 Va. 872, 894, 75 S. E. 2d 694, 708 (affirmed, 347 U. S. 656, 74 S. Ct. 833, 98 L. ed. 1025); *Wright* v. *Everett*, 197 Va. 608, 614, 90 S. E. 2d 855, 859.

The evidence in the present case which the jury have accepted brings the case within this principle. The defendants not only willfully and deliberately conspired to breach Worrie's contract with the plaintiffs, but in furtherance of that conspiracy they undertook to take and steal a part of the plaintiffs' business. There is ample evidence to support the award of punitive damages.

The general rule is that there is no fixed standard for the measure of exemplary or punitive damages and the amount of the award is largely a matter within the discretion of the jury. *United Construction Workers* v. *Laburnum Construction Corp.*, *supra*, 194 Va., at page 895, 75 S. E. 2d, at page 709.

The defendant, Worrie, argues that there is no legal basis for the award of punitive damages against him because, he says, the plaintiffs' cause of action against him is based upon the breach of his contract, and that under our decisions, the latest of which is *Wright* v. *Everett*, *supra*, 197 Va., at page 615, 90 S. E. 2d, at page 860, punitive damages are not recoverable in an action for breach of contract.

This argument overlooks the fact that the plaintiffs' action here against Worrie is not for breach of his contract. As has been previously pointed out, it is for the tort committed by Worrie in conspiring with Baily to induce Worrie to breach his contract with the plaintiffs.

There is no merit in the remaining assignments of error which relate to matters already dealt with. The judgment is

*Affirmed.*