## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Allstate Financial Corp.

v.

Pan-American Financial Corp. et al.

March 26, 1984

Case No. (Chancery) 14833

## By JUDGE ALBERT H. GRENADIER

The plaintiff has demurred to the five counterclaims of the defendants on the ground that each of the said counterclaims fails to state facts upon which the relief sought can be granted. This being a chancery action, the counterclaims are more properly designated as separate counts of a cross-bill of complaint, but for the sake of consistency the Court will also refer to them as counter-claims.

The Court, having reviewed the counterclaims and the demurrer, as well as the relevant case authorities and the memoranda of counsel, is of the opinion that the demurrer should be sustained as to the first counter-claim and overruled as to the remaining counterclaims.

The first counterclaim alleges that the plaintiff corporation through two of its officers, made certain misrepresentations, willfully and maliciously injuring the defendants in their reputation, business and profession, in violation of § 18.2-499 of the Code of Virginia. If the allegations are read literally, there can be no conspiracy, as the only alleged conspirator is the plaintiff corporation. If the allegations can be interpreted to mean that the two corporate officers conspired with

the corporation, the allegations are still insufficient to state a cause of action under this code section.

A corporation cannot be guilty of conspiring with its officers or agents. Employees of a corporation cannot conspire among themselves if their only connection is through the employer's affairs. *Merkel Associates, Inc. v. Bellofram Corp.*, 437 F.Supp. 612 (D.C.N.Y. 1977). Since a corporation can act only through its agents, officers and employees, a "conspiracy" between a corporation and agents of the corporation acting within the scope of their employment is a legal impossibility. *Nelson Radio and Supply Co. v. Motorola, Inc.*, 200 F.2d 911, cert. den. 345 U.S. 925, 97 L.Ed. 1356, 73 S.Ct. 783 (1953); *Bull v. Logetronics, Inc.*, 323 F.Supp. 115 (E.D.Va. 1971); *Griffith v. Electrolux Corp.*, 454 F.Supp. 29 (E.D. Va. 1978). For these reasons the Court will sustain the demurrer to the first counterclaim and dismiss the same.

With respect to the remaining counterclaims, the plaintiff argues that the filing of its bill of complaint is absolutely privileged giving it absolute immunity from civil antitrust liability. Counsel cites as authority for this proposition the *Noerr-Pennington* doctrine, established in the cases of *Eastern Railroad Conference v. Noerr Freight Co.*, 365 U.S. 127 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657 (1965). In these cases the court held that one who petitions a legislative or executive body is immune from civil antitrust liability, even if his actions were designed to monopolize or eliminate competition. The immunity granted by this doctrine, however, is not absolute. In *Noerr* the court indicated that there may be situations in which the actions taken may be nothing more than an attempt to interfere directly with the business relationships of a competitor, in which case the application of the Sherman Act is justified. This is known as the sham exception to the *Noerr-Pennington* doctrine.

In *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 30 L.Ed.2d 642, 92 S.Ct. 609 (1972), the court recognized the sham exception as adapted to the adjudicatory process. In *Technicor Medical Information Systems Corp. v. Green Bay Packaging, Inc.*, 480 F.Supp. 124 (E.D.Wisc. 1979), the court held that the sham exception of *Noerr-Pennington* is applicable to the adjudicatory process where there is a showing that the use of the process is not a genuine attempt to use the process cor-

rectly. The court held further that the bringing of a single lawsuit in bad faith or without probable cause is sufficient to bring the action within the sham exception. In *Hydro-Tech Corp. v. Sundstrand Corp.*, 673 F.2d 1171 (10th Cir. 1982), the court declined to go that far. The court held in *Hydro-Tech* that the term "sham" is something more than a mere absence of probable cause and means a misuse or corruption of the judicial process, and that the filing of a lawsuit without probable cause and with an anticompetitive intent simply does not come up to the standard set by the Supreme Court in *California Motor Transport Co.*

In *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386 (9th Cir. 1983), the court held that allegations by a corporation that a competitor conspired with a law firm and its clients to bring a lawsuit for the purpose of generating adverse publicity thereby seeking to competitively harm the corporation could be sufficient to state a claim of abuse of judicial process and the lawsuit could be a "sham" within the exception to the *Noerr-Pennington* doctrine.

In *Clipper Express v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240 (9th Cir. 1982), the court reaffirmed the proposition that a single suit may be sufficient to invoke the sham exception and held further that whether something is a genuine effort to influence governmental action or a mere sham under the exception to *Noerr-Pennington* is a question of fact that cannot be resolved on a motion for summary judgment.

In the case of *MCI Communications Corp. v. American Telephone & Telegraph Co.*, 708 F.2d 1081 (7th Cir. 1983), the court held that the bringing of baseless claims, even the undertaking of a single sham state court lawsuit, are sufficient to invoke the sham exception to *Noerr-Pennington*.

Although the counterclaims contain a number of conclusory allegations, it is nevertheless apparent that the causes of action have as their genesis the filing of this suit by the plaintiff. It is alleged by the defendant-counterclaimant that the plaintiff's suit was filed in bad faith and was an improper use of the legal process. The allegation made in the counterclaims describe conduct certainly more egregious than a mere absence of probable cause or an intent to destroy competition. It is clear from the authorities that the filing of a single lawsuit

can constitute a sham within the exception to the *Noerr-Pennington* doctrine. Whether a particular course of conduct is a sham or is permissible is a question of fact to be resolved upon a trial on the merits. The Court cannot say that the counterclaimant has failed to state a cause of action at this stage in the proceedings.

The Court is also of the opinion that the counterclaims are not contingent or premature. It is true that a demurrer will lie if it appears on the face of the complaint that the claimant has no right of action at the time the claim is brought. Rule 2:13 of the Rules of Court does not require, however, that the cause of action stated in a cross-bill exist prior to the institution of the suit by the plaintiff. The cause of action need only exist at the time the cross-bill is filed. Nor are the causes of action stated in the counterclaims completely contingent upon the failure of the plaintiff's case. For instance, the plaintiff may be entitled to relief against some of the defendants, but still may be held liable to other of the defendants under the counterclaims.

Accordingly, the demurrer is sustained as to the first counterclaim and overruled as to the remaining counterclaims.