# CIRCUIT COURT OF NELSON COUNTY

C. Allen Foster,
Susan C. Foster,
and William F. Jones

v.

Wintergreen Real Estate Co.,
Richard C. Carroll,
and Peter V. Farley

November 16, 2010

Case No. CL09000086

By Judge J. Michael Gamble

I am writing to rule on the demurrer and motion to dismiss of the defendants. My rulings will follow the same order as the arguments in support of the demurrer and motion to dismiss set forth in the opening memorandum of the defendants.

## General Matters

The function of a demurrer is well settled. It tests whether the complaint states a cause of action upon which relief can be granted. *Shelor Motor Co. v. Miller*, 261 Va. 473, 478, 544 S.E.2d 345, 348 (2001). Further, the demurrer admits the truth of all properly pleaded material facts and all reasonable inferences fairly and justly drawn from the facts. The demurrer does not admit the correctness of conclusions of law pleaded. *Dodge v. Trustees of Randolph-Macon Woman's College*, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008).

A court may also consider the contents of documents that are a part of the pleading or mentioned in the pleading and produced pursuant to a motion craving oyer. *Smith v. Chesterfield Meadows Shopping Ctr. Assocs., L.P.*, 259 Va. 82, 85, 523 S.E.2d 834, 835 (2000); *Ward's Equipment, Inc. v. New Holland North Am., Inc.*, 254 Va. 379, 382-83, 493 S.E.2d 516, 518 (1997).

## Economic Loss Doctrine

The Supreme Court of Virginia has issued a series of decisions holding that a litigant cannot assert tort claims that arise out of contractual duties. See most recently *Station # 2, L.L.C. v. Lynch*, 280 Va. 166, 695 S.E.2d 537 (2010). In their demurrer the defendants argue that the claims of the plaintiff for fraud in the inducement under Count I, negligent breach of professional duties under Count II, breach of fiduciary duty under Count III, statutory conspiracy under Count VI, common law conspiracy under Count VII, and tortious interference under Count IX must be dismissed because they are tort claims that arise out of contract. The rule under which tort claims are barred when a cause of action arises out of contract is commonly called the economic loss doctrine. See *Abi-Najm v. Concord Condominium, L.L.C.*, 280 Va. 350, 699 S.E.2d 483 (2010). In order to determine whether the economic loss doctrine applies, a court must first determine "whether a cause of action sounds in contract or tort." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998).

Tort law provides a remedy for common law and statutory duties involving the safety of persons and property which are imposed to protect the broad interests of society. *Filak v. George*, 267 Va. 612, 618, 594

S.E.2d 610, 613 (2004). Accordingly, damages resulting from a breach of duty created by agreement, rather than a duty imposed by law, can only be recovered pursuant to contract law rather than tort law. *Abi-Najm*, 699 S.E.2d at 489; *Filak*, 267 Va. at 618, 594 S.E.2d at 613.

Even though the economic loss doctrine prohibits tort claims arising out of a contractual relationship, an act or occurrence can, under certain circumstances, support causes of action for both contract and tort. *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 266-67, 682 S.E.2d 943, 946 (2009); *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991). Generally, however, an action in fraud must plead a misrepresentation of present pre-existing facts and cannot be predicated on unfulfilled promises or statements as to future events. *Lloyd v. Smith*, 150 Va. 132, 145, 142 S.E. 363, 365 (1928). Due to this general rule, most breaches of contract cannot be made a basis for an action in fraud because the breach of contract does not occur at a time that the alleged misrepresentation of pre-existing facts occur. *Boykin v. Hermitage Realty*, 234 Va. 26, 29, 360 S.E.2d 177, 178 (1987). Notwithstanding the general rule, however, an action in tort for deceit and fraud may sometimes be predicated on promises which are made *with a present intention not to perform them. Boykin*, 234 Va. at 29, 360 S.E.2d at 178. See also, *Abi-Najm, supra*.

The allegations in paragraphs 17, 20, 21, 23, 24, 25, 27, 29, and 33 in the amended complaint are sufficient allegations of misrepresented facts that would induce the plaintiffs to purchase and sell real estate through the defendants' firm together with the intention not to perform the representations at the time they were made. Accordingly, the court finds that the allegations in the amended complaint are sufficient to overcome the demurrer to fraud in the inducement on the basis of the economic loss doctrine.

Defendants further argue that the demurrer to Count II, Breach of Professional Duties, should also be sustained on the basis of the economic loss doctrine.

In Count II, the plaintiffs pleaded an action for negligent breach of the standard of care by a real estate professional. The plaintiffs assert that the defendants owed duties to the plaintiffs under "the standard of care prevailing in the locale," under the realtor code of ethics, and under the regulations of the Virginia Real Estate Board. The plaintiffs make no allegation of a breach of professional duties under Va. Code § 54.1-2130 et seq. In particular, Va. Code §§ 54.1-2130, 54.1-2131, 54.1-2132, and 54.1-2144 set forth the statutory duties of real estate professionals that are incorporated into each contract for the purchase or sale of real estate. Section 54.1-2131 sets forth the duties of agents representing sellers, and § 54.1-2132 sets forth the duties of agents representing buyers. Both incorporate the definition of "brokerage relationship," which is defined under Va. Code § 54.1-2130 as a contractual relationship between the client and real estate

professional. Further, Va. Code § 54.1-2144 abrogates the common law of agency relative to brokerage relationships in real estate transactions.

Thus, this court must conclude that the duties between a real estate professional and a client are defined by the Code of Virginia and incorporated into each contractual relationship. This was touched on by the Supreme Court of Virginia in *Polyzos v. Cotrupi,* 264 Va. 116, 563 S.E.2d 775 (2002). There, the court noted that Va. Code § 54.1-2131 requires realtors to "perform in accordance with the terms of the brokerage relationship" and "exercise ordinary care." *Polyzos,* 264 Va. at 122, 563 S.E.2d at 778. As noted above, Va. Code § 54.1-2130 defines a "brokerage relationship" as a contractual relationship. Accordingly, any duty to "exercise ordinary care" must arise out of the contractual relationship. The plaintiffs have not stated a cause of action under Count II for a tort action based upon a failure of the real estate professionals to exercise ordinary case. The issue of whether the real estate professional exercised ordinary care can only be considered in connection with the cause of action for breach of contract.

The demurrer is sustained as to Count II, and it is dismissed.

The plaintiffs assert a cause of action for breach of fiduciary duties under Count III of the amended complaint. The defendants also assert a demurrer to Count III on the grounds that the economic loss doctrine prevents a recovery under Count III.

For basically the same reasons this court found that there is no tort cause of action for breach of professional duties, this court also finds that there is no cause of action for breach of a fiduciary relationship independent of the contractual relationship between the parties. Va. Code §§ 54.1-2131 and 54.1-2132 require realtors to "perform in accordance with the terms of the brokerage relationship" and to "exercise ordinary care." *See also, Polyzos,* 264 Va. at 122, 563 S.E.2d at 778. A brokerage relationship is a contractual relationship under Va. Code § 54.1-2130. The common law of agency relative to real estate brokerage relationship has been expressly abrogated. Va. Code § 54.1-2144.

Accordingly, this court must conclude that a fiduciary relationship arises by contract between the broker and client, and the requirements of Va. Code §§ 54.1-2130 and 54.1-2132, defining the duties of a broker, are incorporated by statute into the contractual relationship.

The requirement that a realtor exercise ordinary care is simply a standard that applies to the contractual brokerage relationship for a buyer or a seller.

The demurrer is sustained as to Count III, and it is dismissed.

In Count VI, the plaintiffs assert a cause of action for statutory conspiracy pursuant to Va. Code §§ 18.2-499, 18.2-500. The defendants again assert a demurrer for this count on the grounds that the economic loss doctrine prevents a recovery.

Va. Code § 18.2-499 criminalizes conspiracies to willfully and maliciously injure another in his reputation, trade, business, or profession. Va. Code § 18.2-500 allows a civil recovery of damages for a violation of Va. Code § 18.2-499. However, in order for a pleading of statutory conspiracy to survive a demurrer, it must allege an unlawful act or unlawful purpose. *Station # 2, L.L.C.*, 280 Va. at 173, 695 S.E.2d at 541. The Supreme Court further held that a conspiracy merely to breach a contract that does not involve an independent duty arising outside of the contract is insufficient to establish a civil claim under Va. Code § 18.2-500. *Id.*, 280 Va. at 174, 695 S.E.2d at 541. After reviewing the pleadings, it must be concluded that the allegations of statutory conspiracy allege nothing more than a conspiracy to breach the alleged brokerage contracts between the parties. This court does not agree with the assertion by the plaintiffs that misrepresentation of facts in support of a civil claim for fraud constitutes an unlawful act in the context of statutory conspiracy. A civil claim for fraud does not equate to an unlawful act or unlawful purpose. Further, the duties of real estate agents to their clients are defined by statute and incorporated into the brokerage contract as discussed above. Thus, in the context of the brokerage relationship between the parties alleged in the amended complaint, any misstatement of facts alleged to constitute statutory conspiracy are merely contractual issues. Accordingly, the economic loss doctrine applies, and the demurrer is sustained.

The demurrer on the basis of the economic loss doctrine is sustained as to Count VI, and it is dismissed.

Count VII alleges common law conspiracy. The defendants assert a demurrer to this count on the grounds that it does not state a claim due to the economic loss doctrine. The Supreme Court recognized the common law claim of conspiracy in *Worrie v. Boze*, 198 Va. 533, 536, 95 S.E.2d 192, 196 (1956). In *Worrie*, the Supreme Court held that contracts and the right to loss of profits from contracts are property rights. The court went on to hold that, because the defendants conspired to breach or destroy the contract, the plaintiffs had a right of action for damages to the property as opposed to loss of profits from a breach of contract. *Worrie*, 198 Va. at 536, 95 S.E.2d at 196.

As a result of *Worrie*, a tort action can be brought where there is a conspiracy to breach or destroy a contract because a contract and its profits are deemed to be a property right. Thus, under common law conspiracy, the economic loss doctrine is not applicable because a property right created in contract can be the object of the conspiracy.

The demurrer is overruled as to Count VII.

Count IX alleges tortious interference. The defendants also assert a demurrer to this court on the grounds that it does not state a claim due to the economic loss doctrine.

The requirements for tortious interference in contracts are: (1) the existence of a valid contract or business expectancy; (2) knowledge of the contract or expectancy by the person interfering; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) damage. *Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 835 (1987). Under this tort doctrine, a contract must exist. Thus, the economic loss doctrine does not apply. The allegations in Count IX are sufficient to allege both a contractual relationship and business expectancy. Under this tort action, the existence of either the contract or expectancy is an element of the tort. Thus, the economic loss doctrine cannot apply to this cause of action.

The demurrer to Count IX on the basis of the economic loss doctrine is overruled.

## Fraud in the Inducement

In their demurrer, the defendants assert that the plaintiffs have not sufficiently pleaded fraud in the inducement.

Fraud in the inducement is a species of actual fraud. Actual fraud is defined as: (1) false representation; (2) of a material fact; (3) intentionally and knowingly made; (4) with the intent to mislead; (5) reliance by the parties misled; and (6) resulting damage to the party misled. *State Farm Mut. Auto Ins. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005). Fraud in the inducement occurs when the alleged misrepresentation induced a person to enter into a contract. *J. E. Robert Co. v. J. Robert Co.*, 231 Va. 338, 343 S.E.2d 350, 354-55 (1986); *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 563, 95 S.E.2d 207, 211 (1956).

The defendants first argue that the demurrer should be sustained because promises of future performance cannot support a claim for fraud. *Sales v. Kecoughtan Housing Co.*, 279 Va. 475, 481, 690 S.E.2d 91, 94 (2010). However, notwithstanding this general rule, a fraud action may be maintained where promises are made with a present intention not to perform them. *Boykin*, 234 Va. at 29, 360 S.E.2d at 178. As noted above, the allegations of the amended complaint are sufficient to allege promises made to enter into brokerage relationships with the intention not to perform the promises at the time that the promises were made.

The demurrer on this ground is overruled.

## Statements of Opinion and Puffery

It is settled in Virginia that commendatory statements, trade talk, and puffery do not constitute fraud because these are generally regarded as mere expressions of opinion that cannot be relied upon. *Tate v. Colony House Builders*, 257 Va. 78, 84, 508 S.E.2d 597 (1999).

While certainly there are allegations in the amended complaint that can be construed to come under this rubric, this is really a factual issue that must be developed in discovery or at trial. With all the factual variables in different contractual relationships, the court simply cannot weed-out opinions and puffery from actual factual misrepresentations made for the purposes to induce a contract with the present intent not to perform. Accordingly, the demurrer is overruled on this ground.

## Causal Connection for Damages

The defendants also demur on the grounds that the plaintiffs cannot connect the alleged fraudulent statements to their claim for damages.

In short, the plaintiffs have adequately pleaded in the amended complaint a connection between the alleged fraudulent conduct and their damages. See, for example, paragraphs 92, 116, 136, 145, 155, 160, 171, 175, 179, 184, 195, 198, 201, 204, 207, 210, and the prayer for relief.

The issue of whether damages can be connected to the wrongful acts of the defendants is a matter of proof at trial and development through discovery. The court simply cannot make a conclusive ruling on this issue at this stage of the proceedings.

## Misrepresentations of Mrs. Foster

The defendants maintain the pleadings do not adequately state that fraudulent misrepresentations were made to Mrs. Susan Foster and that she justifiably relied upon those misrepresentations. This ground of the demurrer is overruled. These allegations are sufficiently set forth in the amended complaint, including paragraphs 60 and 61.

## Breach of Contract

The defendants assert that the allegations in Count IV of the amended complaint are not sufficient to constitute a claim of breach of contract. The essence of the defendants' demurrer on this ground is that it is not sufficiently alleged that damages were proximately caused by a breach of contract, that the damages are too speculative, and damages cannot be established with reasonable certainty.

The demurrer on this ground is overruled. The issue of damages is a factual issue that must be developed through discovery and the presentation of evidence at trial. The plaintiffs have alleged damages, and that is enough at this stage.

*Breach of Warranty*

The defendants, in their demurrer, assert that Count V for breach of an express warranty cannot be stated as a separate claim from the contract claim. In this regard, breach of warranty is clearly a matter arising from the contract. It is a claim that is part of a contractual allegation. It would not arise unless there was a contractual relationship between the parties.

The court has not been presented with any argument that leads the court to believe that a demurrer to a breach of warranty claim should be sustained even though it is stated separate from the contract claim. It is merely an allegation that must be considered in conjunction with the contractual relationship.

Accordingly, the demurrer to Count V is overruled. Evidence of breach of warranty will simply be considered along with the other contractual issues in the case.

*Statutory Conspiracy under Va. Code §§ 18.2-499, 18-500*

The court has previously sustained the demurrer to Count VI. However, the defendants have stated an extensive demurrer to Count VI on the basis of the failure to allege concerted action, failure to overcome the intracorporate immunity doctrine, and failure to establish separate entities for purposes of this claim. Even though this count has previously been dismissed, a brief ruling will be given on these issues in order to fully address the matters raised in the demurrer.

First, Virginia recognizes the doctrine of intracorporate immunity. Under the doctrine, a conspiracy cannot occur between persons such as principal and agent who are not legally separate persons. *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 36, 466 S.E.2d 382, 387 (1996). As the Fourth Circuit for the United States Court of Appeals has held, proof of concerted action in conspiracy cases requires action between at least two legally distinct persons or entities. *Oksanen v. Pate Memorial Hospital*, 945 F.2d 696, 702 (4th Cir. 1991). Accordingly, and in this case, Wintergreen Real Estate Company (WREC) and agents Carroll, Farley, Hess, and Lynn could not conspire because they are not legally separate. Thus, the demurrer is sustained on the allegations that WREC and its four agents conspired because they are not legally separate entities.

The plaintiffs assert, however, that the "personal stake" exception to this rule applies. Under this exception, a conspiracy claim may be maintained, even though it only involves a conspiracy of officers and agents, when an officer has an independent personal stake in achieving the improper corporate objectives that are the object of the conspiracy. *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974).

Even though the personal stake exception was announced by the Fourth Circuit Court of Appeals in 1974, it has not been adopted in Virginia. Thus, without its adoption, this court holds that it would be improper to recognize that exception.

The plaintiffs have also named HCA and Southern Title Blue Ridge Settlement, L.L.C. (STBRS) as non-party co-conspirators. In their demurrer, the defendants argue that the allegations are not sufficient to demonstrate how HCA and STBRS conspired. Also, it is alleged that the relationship of the principals in WREC with HCA and STBRS make the intracorporate immunity doctrine applicable to the relationship with the defendants for conspiracy purposes. However, had not the demurrer been sustained on two other grounds, these issues would have been factual issues to be developed in discovery and established at trial. Accordingly, the demurrer would have been overruled on these grounds.

### False Advertising Pursuant under Va. Code § 18.2-216

The defendants assert a demurrer to Count VIII which alleges that the defendants engaged in false advertising in violation of Va. Code § 18.2-216. Under Va. Code § 18.2-216, false advertisement is defined as "any promise, assertion, representation, or statement of fact which is untrue, deceptive, or misleading or uses any other method, device, or practice which is fraudulent, deceptive, or misleading to induce the public to enter into any obligation. . . ." This statute, however, has been interpreted to only apply to non-verbal advertising. *Henry v. R.K. Chevrolet, Inc.*, 219 Va. 1011, 1012, 254 S.E.2d 66, 68 (1979). The defendants argue that the fact that the WREC website and promotional brochures state that WREC is a member of MLS is not sufficient to constitute a civil violation of this statute. The argument is that it is true that WREC is a member of MLS and thus there is nothing false in that statement.

However, the pleadings allege that this was a misrepresentation because the defendants did not follow the MLS rules, including the advertisement of all of their properties through MLS. This is a sufficient allegation of misrepresentation to survive the demurrer.

The second ground of the demurrer is that the allegations of the amended complaint do not sufficiently allege that the plaintiffs suffered damages as a result of any false advertising. This ground of the demurrer is also overruled because this is a matter that is subject to proof at trial.

### Tortious Interference with Contract or Expectancy

The defendants assert a demurrer to Count IX of the amended complaint, which alleges tortious interference with a business expectancy. The first ground of this demurrer is that a sufficient business expectancy

has not been alleged. The Supreme Court has held that the existence of a business expectancy, and interference causing a breach or termination of the expectancy, must meet an objective test. Mere belief and hope that a business relationship will continue is inadequate to sustain the cause of action. *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301, 484 S.E.2d 892, 897 (1997); *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 292, 576 S.E.2d 752, 758 (2003).

Both *Commercial Bus. Sys., Inc.* and *Williams* were cases where the trial and appellate courts ruled on the objective standard after evidence had been admitted at trial. At this stage, it is impossible for the court to rule whether the objective standard has been met because the court does not have sufficient evidence. The allegations in the amended complaint, however, sufficiently allege a business expectancy and interference with that expectancy. Accordingly, the demurrer is overruled on this ground.

Next, the defendants assert that there has not been a sufficient allegation of tortious interference because an agent cannot interfere with his principal's contract (or expectancy).

In Virginia, a person cannot intentionally interfere with his own contract. Further, an agent cannot interfere with the contact of its principal. *Fox v. Deese*, 234 Va. 412, 427-29, 362 S.E.2d 699, 708-09 (1987).

Under the allegations of the amended complaint, it is clear that the defendants Carroll, Farley, Hess, and Lynn were agents of WREC. This is specifically pleaded in paragraphs 6, 7, 8, and 9. Count IX, paragraphs 190-195, simply allege that the defendants interfered with the business expectancy. Thus, under the allegations, nothing more than the principal and its agents are alleged to have interfered. The demurrer must be sustained on this ground.

The plaintiffs argue that the exceptions to the intracorporate immunity doctrine apply to tortious interference of contract. However, no decision of the Supreme Court of Virginia recognizes the independent stake doctrine or that it applies to tortious interference with a business expectancy.

Accordingly, the demurrer to Count IX is sustained, and it is dismissed.

The defendants also assert a demurrer to Count IX on the grounds that there are two additional unstated elements to this tort. Under this argument, it must be alleged that there was a competitive relationship between the party interfered with and the interferor and that the defendants had some contact with the source of the plaintiffs' business expectancy. See *17th Street Assocs., L.L.P. v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 600-01 (2005). These additional two elements have not been adopted by the Supreme Court of Virginia. Accordingly, the demurrer is overruled on this ground.

*Respondeat Superior*

Count X, Count XI, Count XII, and Count XIII allege liability of the individual defendants on the grounds of *respondeat superior*. The basic allegations are that each individual defendant was an agent of every other individual defendant, thus making each agent liable under the doctrine of *respondeat superior* for the acts of each other agent. Under this doctrine, an employer can be held liable for an employee's action. The issue is whether the employee was within the scope of employment when the act that caused the injury was committed. *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 526, 539 S.E.2d 426, 428 (2000).

In their demurrer, the defendants argue that the *respondeat superior* counts set forth separate causes of action rather than theories of liability.

While the court has questions about whether one agent can legally be construed as the employer of another agent (as opposed to WREC), this is a matter to be developed in discovery and at trial. At the present time, the *respondeat superior* counts do set forth a theory of liability as opposed to a separate tort cause of action. Accordingly, the demurrer is overruled as to Counts X to XIII.

*Punitive Damages*

Under Count XIV, the plaintiffs assert their claims for punitive damages. The defendants argue that the claims for punitive damages cannot be a free-standing count of the amended complaint. The defendants argue that this can be construed as a cause of action. However, after reviewing Count XIV, it is clearly just a statement of the additional remedy for punitive damages. The counts for the intentional torts of fraud in the inducement and common law conspiracy have survived the demurrer of the defendants. Thus, the plaintiffs are entitled to assert a claim for punitive damages. Accordingly, the demurrer to Count XIV for punitive damages is overruled.

The defendants also assert as part of their demurrer that the $5,000,000 claim for punitive damages exceeds the statutory punitive damage cap of $350,000 established by Va. Code § 8.01-38.1. Clearly, this is correct.

This leaves, however, in issue whether the $350,000 cap applies to the suit as a whole or to each individual defendant. Compare *Al-Abood v. El-Shamari*, 217 F.3d 225, 236 (4th Cir. 2000), to *Advanced Marine Enterprises, Inc. v. PRC, Inc.*, 256 Va. 106, 125, 501 S.E.2d 148, 159 (1998). Va. Code § 8.01-38.1 provides:

> the total amount awarded for punitive damages against all defendants found to be liable shall be determined by the trier of fact. In no even shall the total amount awarded for punitive damages exceed $350,000.

After reviewing this statute, the court concludes that it applies to the entire lawsuit rather than to each individual defendant. The first sentence describes "all defendants found to be liable," and the second sentence speaks to the "total amount awarded for punitive damages." Had the General Assembly intended for the punitive damage cap to apply to each defendant, it would have added or substituted the words "each defendant" in the two sentences.

Because Va. Code § 8.01-38.1 is self-activating, it is not necessary to amend the pleadings. By law, if the punitive damages exceed $350,000, they must be reduced by the court to that amount.